ARTEMAS ROGERS, Administrator, *versus* SILAS
BRUCE *et al.*

Where the plaintiff erected a dam across the outlet of a pond, and acquired a right by prescription to use the water, it was *held*, that the erection of a new dam by the defendants higher than the old one, was not, in itself, an infringement of the plaintiff's rights ; for the plaintiff had a right to adopt and use the new dam to the height of the old one ; but that the defendants were entitled, as against the plaintiff, to use the water, when raised by means of the new dam above the top of the old dam, provided they did not thereby prejudice in any manner the rights of the plaintiff.

CASE for detaining and diverting the waters of a stream flowing from a pond in Lunenburg to the saw-mill of Benjamin Goodridge, the plaintiff's intestate.

At the trial, before *Wilde* J., the plaintiff proved, that Joshua Wood formerly owned a saw-mill on the site where Goodridge's mill stood ; that, in November 1802, Peter A. Wilder, under whom the defendants claimed, Wood, Goodridge, and the other proprietors of the land between the outlet

on the pond and Goodridge's mill, entered into an agreement under seal with Samuel and John Billings, in relation to the erection of a dam at the outlet of the pond and the use of the water by such proprietors ; and that by this agreement it was stipulated "that if the said Joshua Wood, his heirs or assigns, shall at any time hereafter build a saw or grist mill, at or near the place where he formerly had a saw-mill, in that case, he or they shall be revested with all the same privileges, during the continuance of such mill, that they would have been, provided that this agreement had never been made."

The plaintiff further proved, that in 1804, Goodridge purchased the estate which formerly belonged to Wood, includ ing the mill site ; that in 1807, Goodridge erected his saw-mill thereon, and repaired the dam at the outlet of the pond ; and that from that time until the autumn of 1831, Goodridge had had the peaceable and exclusive use of the dam for draw ing the water from the pond as he wanted it, for the use of his mill.

Evidence was offered, tending to show, that in the autumn of 1831, the defendants erected a new dam at the outlet, so much higher than Goodridge's dam, that it caused the water to flow occasionally from the pond in a direction different from that of the stream, and prevented it from flowing to Goodridge's mill ; and that they detained the water as they pleased.

The plaintiff contended, that the agreement, connected with the fact, that Goodridge had had the use of the dam and the waters for more than twenty years, gave him a vested right to the enjoyment of them as they were in 1801 ; and that neither Wilder, nor his grantees, could interfere with the dam of Goodridge without his consent, or prevent his drawing water from the pond as he had been accustomed to do.

But the jury were instructed, that although the plaintiff, by the agreement, and by the quiet use and enjoyment of the dam and water for more than twenty years, had acquired the right to such use of the water, yet if the defendants had a valuable privilege for a mill on their own land, of which there was evidence given, they had a right to erect a dam for the purpose of using such privilege, provided they did not thereby do any injury to the plaintiff.

16 *

The case was submitted to the jury to determine, on the whole evidence, whether the defendants had withheld or diverted the water to the injury of the plaintiff.

The jury returned a verdict for the defendants.

If the instruction was erroneous, or if the Court should be of opinion, that it was incumbent on the defendants to give notice to the plaintiff, without being requested, that he might have liberty at all times to hoist their gate, for the purpose of letting down water, as he wanted it, then the verdict was to be set aside and a new trial granted, if the Court should so direct ; otherwise judgment was to be entered on the verdict.

*Sept 30th.*  *Bigelow*, for the plaintiff, cited *Pastorius* v. *Fisher*, 1 Rawle's R. 27 ; *Bealey* v. *Shaw*, 6 East, 208 ; *Hobson* v. *Todd*, 4 T. R. 71 ; *Saunders* v. *Newman*, 1 Barn. & Ald. 258.

*Washburn*, for the defendant, cited 3 Kent's Com. 353, 354, 356, 358 ; Angell on Water-Courses, 37, 40, 48, 47 ; 3 Dane's Abr. 246 ; *Platt* v. *Johnson*, 15 Johns. R. 213 ; *Gayetty* v. *Bethune*, 14 Mass. R. 49 ; *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 448 ; *Bealey* v. *Shaw*, 6 East, 208.

PUTNAM J. afterward drew up the opinion of the Court. The case finds, that in 1804, Goodridge purchased the estate which was Joshua Wood's, including the mill site ; that in 1807, Goodridge erected a saw-mill near where that of Wood stood, repaired the dam at the outlet of the pond, and, from that time to the fall of 1831, had the peaceable and exclusive use of the dam for drawing water from the pond as he wanted it for the use of his mill. Thus Goodridge acquired a right to the water to be stopped by the dam which he so repaired, to the height of the dam, as a reservoir for mill purposes, to be drawn as he should want it. The right was as perfect as if the defendants, who owned the land between the pond or reservoir and the mill, had granted the privilege to Goodridge and his heirs and assigns. And the defendants cannot legally obstruct the plaintiff, claiming under Goodridge, in the exercise of that right.

The case finds that the defendants, in 1831, erected a new dam at the outlet of the pond much higher than the old one

was. But the jury found, that the defendants had not withheld or diverted the water to the injury of the plaintiff.

Now the Court is of opinion, that the dam which the defendants built, up to the height of that which Goodridge built, might have been adopted and used by him, and that he might have used the flume and gate, just as he would have rightfully used the old dam and flume and gate, to draw water from the pond or reservoir, whenever he wanted it for mill purposes ; and of course, that the new dam was no invasion of the plaintiff's rights.

If the defendants could make any use of the water which would be raised above or higher than the top of the old dam repaired by Goodridge, they (the defendants) might do so, provided that they should not thereby prejudice the right of Goodridge in any manner. But when the water should be drawn down so low, as to stand at the height of the top of the old dam, the defendants must stop, and could not legally draw any below the top of the old dam, unless with the leave and consent of Goodridge and of those who claim under him. And this, for the reason above stated, that Goodridge had acquired a right to the pond or reservoir to the height of the old dam : and the defendants cannot divert it or obstruct the plaintiff in the exclusive use of it as a reservoir for mill purposes.

But the plaintiff is not prejudiced by the defendants' raising the water higher than the old dam, unless the defendants should use it in some manner that would be injurious to the plaintiff ; for example, by suffering the surplus water to collect, and then to flow down like a torrent and carry away the works of the plaintiff.

The Court is of opinion, that the plaintiff would have been entitled to damages for any diversion of the water at the north end of the pond, which should have been occasioned by the high dam which the defendants had built, if the evidence had been sufficient. But such damage has been negatived by the jury. And so, if the plaintiff should be obstructed or hindered from drawing water through the flume and gate erected by the defendants, whenever he should want it for mill purposes, the plaintiff would be entitled to his action for damages for such obstruction.

Rogers
v.
Bruce.

Rogers
v.
Bruce.

The rights of the plaintiff are preserved by establishing the right to draw the water at the new dam, as is before mentioned. And the right of the defendants is confined to drawing what shall be above or higher than the top of the old dam ; and that is to be done without prejudice to the plaintiff, as is above stated.

But inasmuch as there has not been any disturbance in fact, of the plaintiff's right, the judgment must be for the defendants, according to the verdict.